# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOE LOUIS McCAIN, JR.,

      Petitioner,

v.                                Case No. 8:21-cv-1053-CEH-NHA

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and a memorandum in support (Doc. 1-1). Respondent filed a response opposing the petition (Doc. 10) and exhibits (Doc. 10-2). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

      Petitioner was charged by Information with attempted first-degree murder with a firearm causing great bodily harm (Doc. 10-2, Ex. 3 at 227-28).[1] However, the jury found Petitioner guilty of the lesser-included offense of attempted second-degree murder with a firearm and causing great bodily harm (*Id.*, Ex. 2 at 139). He was

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

1

sentenced to life in prison without parole (*Id.*, Ex. 2 at 160; Ex. 3 at 218-19). The conviction and sentence were affirmed on appeal (*Id.*, Ex. 8).

Petitioner filed a motion for post-conviction relief under Rule 3.850, Fla.R.Crim.P., in which he raised claims of ineffective assistance of trial counsel and one ground of cumulative error by counsel (*Id.*, Ex. 10). After multiple supplements and amendments to the Rule 3.850 motion (*see id.*, Exs. 10-1, 10-2, 10-3, 12, 12-1, 12-2, 12-3), the state post-conviction court denied claims 2, 3, 4, 5, and 7, deferred ruling on claim 6 (the cumulative error claim) and directed the State to respond to claim 1 (*Id.*, Ex. 15 at 1000-1003).[2] After the State responded (*id.* at Ex. 15 at 1078-1105), the state post-conviction court denied claim 1 (*Id.*, at Ex. 15 at 1106-1109).[3] The denial of relief was affirmed on appeal (*Id.*, Ex. 17).

Petitioner filed a second Rule 3.850 motion contending he was denied due process because the trial court never issued a final order determining he was competent to proceed to trial (*Id.*, Ex. 22 at 1168-1183). The motion was denied as procedurally barred because it was untimely and successive (*Id.*, Ex. 22 at 1184-1185). The denial of relief was affirmed on appeal (*Id.*, Ex. 24).

---

[2] The order (*see id.*) addressed neither claim 8 (failure to call Sherika Coleman as a witness) nor claim 9 (inclusion of biased juror on jury panel deprived Petitioner a fair trial) that were raised in his amended motions (*Id.*, Exs. 12-2, 12-3).

[3] Claims 6, 8, and 9 were not addressed in the final order (*Id.*).

2

Petitioner filed a Motion to Correct Illegal Sentence under Rule 3.800, Fla.R.Crim.P., in which he argued his life sentence exceeded the statutory maximum sentence allowed for his offense (*Id.*, Ex. 26). The motion was granted, and Petitioner was resentenced to 30-years imprisonment (*Id.*, Ex. 30). The resentencing was affirmed on appeal. *State v. McCain*, 333 So.3d 119 (Fla. 2d DCA 2022) [table].

Petitioner filed his federal petition in this Court (Doc. 1) in which he alleges seven claims of ineffective assistance of trial counsel, and a claim that the cumulative effect of counsel's errors rendered his trial fundamentally unfair.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

A. Standard of Review Under the AEDPA

3

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

4

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Fla. Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Moreover, to properly exhaust a claim, "the [petitioner] must have

presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995)

Under the procedural default doctrine, a claim raised in a federal habeas petition is barred from review if the claim was not properly raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a petitioner must show "either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

C. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires showing deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Petitioner must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III. ANALYSIS

**Ground One: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to take appropriate action on Appellants [sic] motion regarding the glaring misbehavior of the prosecutor during closing argument. (Doc. 1 at 6-7)**

Petitioner contends counsel was ineffective in failing to object and request a curative instruction after the prosecutor, during closing argument, said, "a lot of the things the defense counsel was saying, I didn't hear from the witness stand." Petitioner argues the comment was improper because it injected the prosecutor's opinion into the case and implied defense counsel was manipulating the jury. He further argues he was prejudiced because had counsel objected and requested a curative instruction, the trial court would have instructed the jury "that the Prosecutor's statement was inflammatory and of his own personal opinion, thus not to be considered as evidence. . .", and there is a reasonable probability he would have been acquitted.

7

Initially, Respondent contends this ineffective assistance claim is procedurally barred from review because Petitioner failed to exhaust his state court remedies (Doc. 10 at 20). Respondent asserts that although on direct appeal Petitioner raised a substantive due process violation claim about the prosecutor's statement, Petitioner never presented an ineffective assistance of counsel claim about this issue to the state courts (*Id.*). Thus, Respondent argues, Petitioner is not entitled to federal habeas review on this claim "because an ineffective assistance claim is analytically distinct from the substantive claim underlying it[.]" (*Id.*).

Petitioner failed to raise an ineffective assistance claim about this issue during his post-conviction proceedings (*See* Doc. 10-2, Exs. 10, 10-1, 10-2, 10-3, 12, 12-1, 12-2, 12-3, 15). However, on direct appeal he argued he was denied due process and a fair trial when the trial court refused to give a curative instruction after the prosecutor made the improper comments (*Id.*, Ex. 6 at 775-79). But a substantive claim that the trial court erred in denying a curative instruction differs from a claim that trial counsel was ineffective in failing to object to an improper comment and request a curative instruction. *See Taylor v. Sec'y, Dep't of Corr.*, 507 Fed.App'x. 887, 891-92 (11th Cir. 2013) (stating that "for purposes of exhaustion of state remedies, a substantive claim is 'separate and distinct' from an ineffective assistance of counsel claim based on the substantive claim."). Thus, this claim has not been exhausted.

Because Petitioner cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is

procedurally defaulted. *See Smith v. Jones*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Petitioner fails to establish cause and prejudice or actual innocence to excuse the procedural default of this claim. Therefore, this claim is procedurally barred from habeas review.

Even if the claim were not procedurally barred, it would fail on the merits. Contrary to Petitioner's assertion, counsel objected to the prosecutor's statement and requested a curative instruction (Doc. 10-2, Ex. 4 at 705, 717-25). Thus, Petitioner's claim is belied by the record. Therefore, Ground One warrants no relief because it is procedurally barred from review and meritless.

**Ground Two: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to properly argue as to a bias [sic] juror not being stricken from sitting on Petitioner's jury panel (Doc. 1 at 9-13)**

Petitioner contends counsel was ineffective in failing to move to strike Juror Isabel Ramirez from the jury as biased against Petitioner. Petitioner acknowledges defense counsel moved to strike Ramirez because of her body language and the manner in which she looked at Petitioner but asserts counsel also should have argued that her responses during voir dire revealed she was biased against Petitioner. He

argues Ramirez's responses show she considered Petitioner guilty before any evidence was presented.

This claim was raised in state court as claim 1 of Petitioner's amended Rule 3.850 motion (Doc. 10-2, Ex. 15 at 964-68). In denying the claim, the state post-conviction court stated:

> In claim 1, the Defendant asserts that trial counsel was ineffective in failing to remove juror Ramirez for cause and/or failing to provide a race-neutral basis for the juror's removal. The Defendant's claim is based on the juror's responses to questions by trial counsel as to how the juror would vote as to the Defendant's guilt without hearing any evidence and a question as to why someone might not want to testify. (See transcript attached pp. 86-89 and pp. 102-103, attached to Defendant's Motion.) In its Response, incorporated herein by reference, the State argues that claim 1 should be denied. The Court agrees.
>
> When a defendant alleges his trial counsel was ineffective for failing to challenge a biased juror in a postconviction motion, the defendant must "demonstrate that a juror was actually biased." "A juror is competent if he or she 'can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.' Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror." "Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial-i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." This is a higher standard than on direct appeal-mere doubt about a juror's impartiality is insufficient under this standard. [See Carratelli v. State, 961 So. 2d 312, 326 (Fla. 2007) and Lusk v. State, 446 So. 2d 1038 (Fla. 1984)] [See also Jenkins v. State, 824 So. 2d 977, 982 (Fla. 4th DCA 2002)("The nature of the juror's bias should be patent from the face of the record. Only where a juror's bias is so clear can a defendant show the necessary prejudice under *Strickland*, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome'.")

10

As stated in the State's Response, the juror "never stated that she was actually biased against Defendant or that she would find him guilty without evidence; when pressed by Trial Counsel, [sic] indicated her preference for having evidence and did not express whether her inclination to consider guilt would be a certainty." Additionally, at the beginning of jury selection the jurors were asked if they could follow instructions concerning the presumption of innocence and the Defendant's right to remain silent. The juror in question answered in the affirmative that she could. (See transcript, attached to the Court's Order to Show Cause and Order on Defendant's Amended Motion for Post Conviction Relief, pp. 22-26) Given the above, there is no indication that the juror was actually biased against the Defendant such that confidence in the outcome of the trial has been undermined. Her answers indicated she could lay aside any preconceived notions she might have and base her verdict on the evidence presented.

Whether counsel was ineffective or not in presenting a race-neutral basis for the juror's removal or if viewed as a failure by trial counsel to challenge the juror for cause, the Defendant must show that he was prejudiced by trial counsel's failure. As pointed out in the State's Response, the juror's answers to the individual questions by trial counsel concerning the presumption of innocence and the Defendant's right to remain silent do not rise to the level of actual bias or bias-in-fact that are necessary to show the Defendant was prejudiced pursuant to Strickland. Accordingly, claim 1 is denied.

(Doc. 10-2, Ex. 15 at 1107-1108). The appellate court affirmed without a written opinion (*Id.*, Ex. 17).

Considering the record as a whole, the Court cannot say that the state post-conviction court's determination that Petitioner failed to demonstrate prejudice was contrary to, or an unreasonable application of, *Strickland* or that the state court's decision was based on an unreasonable determination of the facts. To prevail on this ineffective assistance of counsel claim, Petitioner must demonstrate that Ramirez

11

was actually biased against him.[4] *See Smith v. Phillips*, 455 U.S. 209, 215 (1981).

"The burden is on the challenger to show that the prospective juror was actually

biased, having a 'preconceived notion as to the guilt or innocence of an accused' of

such 'nature and strength' that 'the juror [could not] lay aside his impression or

opinion and render a verdict based on the evidence presented in court.'" *Teasley v.*

*Warden*, *Macon State Prison*, 978 F.3d 1349, 1356 (11th Cir. 2020) (quoting *Irvin v.*

*Dowd*, 366 U.S. 717, 723 (1961)). Petitioner fails to meet his burden.

When asked if she were to deliberate before any evidence was presented

would she "be more likely to reach a guilty or a not guilty verdict[,]" Ramirez

responded, "[p]robably be more towards the guilty." (Doc. 10-2, Ex. 4 at 321). She

then responded, "[p]robably not" after she was asked if she would "be able to put

that feeling aside during the course of this trial?" (*Id.*). Thus, Ramirez's responses

were somewhat equivocal, and she never said she could not be fair and impartial. In

fact, when asked, "[i]s there any reason at all. . .why any of you feel like you could

not be a fair and impartial juror in this case?" none of the jurors responded (*Id.*, Ex. 4

---

[4] In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State*, 28 So.3d 838, 859 (Fla.2009) (citing *Lusk v. State*, 446 So.2d 1038, 1041 (Fla.1984)). *See also, Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

at 315). Moreover, when Ramirez and the other prospective jurors were asked if they agreed with the principal that a person is presumed innocent until proven guilty and if they would give the defendant that presumption, they all affirmatively agreed (*Id.*, Ex. 4 at 258). Petitioner presented no other evidence to show Ramirez was biased against him.

Under the totality of the circumstances, a reasonable attorney could have concluded there was no need to move to strike Ramirez as biased against Petitioner. Furthermore, because Petitioner failed to show Ramirez was actually biased against him, he failed to show prejudice. Accordingly, Ground Two warrants no relief.

**Ground Three: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to conduct adequate pre-trial investigations on the synergistic effect of alcohol and benzodiazepines when consumed together. (Doc. 1 at 15-17)**

Petitioner contends counsel was ineffective because although he knew the victim was intoxicated by alcohol and had benzodiazepines ("benzos") in his system, he failed to investigate how those substances, when consumed together, effect "a person's perception of events in a dramatic situation." He asserts that at the time of the events, the victim had an amount of both substances in his system sufficient "to yield a synergistic effect" that could have affected the victim's "memory, perception and thought process." He further asserts counsel should have called an expert witness to present this evidence. Without this evidence, Petitioner argues, the jury

could not "judge the credibility of the victim against the [Petitioner's] account of self-defense."

This claim was raised in state court as claim 2 of Petitioner's amended Rule 3.850 motion (Doc. 10-2, Ex. 12 at 875-79). In denying the claim, the state post-conviction court stated:

> In claim 2, the Defendant asserts that trial counsel was ineffective in failing to conduct an adequate pretrial investigation on the synergistic effect of alcohol and benzodiazepines when consumed together.
>
> In his claim the Defendant asserts that trial counsel should have investigated the synergistic effect of alcohol and benzodiazepines on the victim's ability to recall the events of the shooting in question. The Defendant appears to indicate this would have been relevant to the fact that a light skinned black male was seen standing over the victim when the initial shots were fired. In his later claims, the Defendant identifies a Chris Jenkins as having seen this individual standing over the victim.
>
> The shooting in question occurred outside a night club. Earlier an altercation had occurred in the club between two female patrons. The victim testified that shortly thereafter the Defendant confronted him and complained that the victim had hit his sister as a result of the altercation in the club. He testified he was acquainted with the Defendant and identified him as his assailant. The victim testified that the Defendant swung at him and the two ended up wrestling on the ground. He testified that the Defendant shot him several times while wrestling on the ground and several more times after the Defendant stood up and while the victim was still on the ground unable to move. (See transcript, attached, pp. 211-216 and pp. 223-247)
>
> The Defendant testified at his trial that he did engage in an altercation with the victim. He testified that the victim pulled out a gun out [sic] while the two were wrestling and that he was able to gain control of the gun and that it went off and the victim was struck in the abdomen. His testimony indicates he was uncertain of how many shots were fired. He testified he then left the area because he was in shock. Additionally, he admitted to law enforcement at the time of his arrest

that he had shot the victim in self-defense and had thrown the gun away. (See transcript, attached, pp. 373-381, pp. 395-397, p. 410, and 309-310)

What is clear is that the victim's and the Defendant's testimony concerning the altercation were substantially the same. The victim and the Defendant were wrestling and the victim was shot. The difference in the two versions of the event involves who was initially in possession of the gun. The Defendant presented a self-defense theory and indicated the victim drew the gun on him. There was no evidence presented that any other shots were fired by any other individual. Particularly the initial shots as the Defendant asserts. (See p. 8 of Defendant's Motion [sic].

By the Defendant's own admission the initial and only shots were fired during his altercation with the victim. Based on the above, the Court finds there would have been no purpose or value in attempting to question the victim's ability to recall the events based on synergistic effect of alcohol and benzodiazepines and attempting to imply that someone else may have shot the victim. Accordingly, claim 2 is DENIED.

(Doc. 10-2, Ex. 15 at 1001-1002). The state appellate court affirmed without a written opinion (*Id.*, Ex. 17).

Initially, the trial transcript reveals that during his opening statement, counsel stated the evidence would show the victim was intoxicated at the time of the events (*Id.*, Ex. 4 at 432). And during cross-examination, defense counsel questioned the victim about his intoxication (*Id.*, Ex. 4 at 507-08). Moreover, during closing defense counsel argued Petitioner was not intoxicated but the victim was intoxicated (*Id.*, Ex. 4 at 692, 695). Thus, counsel clearly presented the jury with information that the victim was intoxicated at the time of the events.

To the extent Petitioner asserts counsel was ineffective in failing to retain an expert who would testify the combination of alcohol and benzos could have impaired the victim's ability to perceive, recall, and recount the events, Petitioner does not present an expert's report or affidavit. Thus, anything that an expert would have testified to is pure speculation. This speculation is insufficient to show that counsel's failure to secure the services of an expert amounted to deficient performance. Petitioner's speculation is also insufficient to show that there is a reasonable probability the expert would have testified that the victim could not perceive and recall the events. Thus, Petitioner's unsupported contention that counsel should have called an unnamed expert to testify, without more, is insufficient to warrant relief. *See, e.g., Bray v. Quarterman*, 265 Fed. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *Holt v. Sec'y, Fla. Dep't of Corr.*, 489 Fed. App'x 336, 338 (11th Cir. 2012) (holding that state court

reasonably rejected *Strickland* claim because "[i]t [was] speculative that an expert witness would in fact have testified" the way petitioner wanted). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009).

Last, as the state post-conviction court concluded, there would have been little value to have an expert testify that the combination of the alcohol and medicine could have affected the victim's memory and perception. Defense counsel already presented evidence of, and argument about, the victim's intoxication. And both the victim and Petitioner agreed the victim was shot while they were tussling over a gun. There was no evidence of a second shooter. Thus, there is no reasonable probability of a different outcome had counsel obtained an expert to testify that the victim's memory and perception were impaired by the combination of the alcohol and medicine.

Petitioner has failed to demonstrate that the state courts' rejection of this claim was contrary to, or an unreasonable application of, *Strickland* or an unreasonable determination of the facts in light of the evidence adduced in state court. Accordingly, Ground Three warrants no relief.

**Ground Four: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to investigate and call Chris Jenkins as a witness. (Doc. 1 at 18-21)**

Petitioner contends counsel was ineffective in failing to investigate Chris Jenkins and call him to testify. He avers Jenkins would have testified that: 1)

17

he witnessed a light-skinned black male with a beard stand over the victim and shoot

him three times; and 2) the victim was under the influence of Benzodia when he was

shot. Petitioner argues this testimony "would have placed someone other than the

defendant as the shooter and. . .[shown] that the victim was incoherent due to his

intoxication and could not identify who shot him."

This claim was raised in state court as claim 3 of Petitioner's amended Rule

3.850 motion (Doc. 10-2, Ex. 12 at 880-83). In denying the claim, the state post-

conviction court stated:

> In claim 3, the Defendant asserts that trial counsel was ineffective
> in failing to conduct an adequate pretrial investigation and present
> Chris Jenkins as a witness. In his Motion, the Defendant asserts that
> Chris Jenkins would have testified that he saw a light-skinned black
> male standing over the victim after the shots were fired. For the reasons
> stated in claim 2, claim 3 is DENIED.

(*Id.*, Ex. 15 at 1002).

The denial of the claim was reasonable. First, Petitioner provided no actual

testimony from Chris Jenkins. Thus, the claim was speculative and insufficient to

warrant relief. *See, e.g., Ashimi*, 932 F.2d at 650 ("[E]vidence about the testimony of a

putative witness must generally be presented in the form of actual testimony by the

witness or an affidavit. A defendant cannot simply state that the testimony would

have been favorable; self-serving speculation will not sustain an ineffective assistance

claim.") (footnotes omitted). Second, to the extent Petitioner relies on the police

reports, nothing in those reports indicates Jenkins knew the victim was under the

18

influence of Benzodia or intoxicated (Doc. 10-2, Ex. 2 at 25-26; Ex. 15 at 993-94). Moreover, although one report indicates Jenkins stated he saw a "light skinned black male subject standing over the victim, and observed the subject shoot the victim approximately three times" (*id.*, Ex. 15 at 994), the other report shows that at the time of the offense, Jenkins stated a black male, approximately 6'2" and 240-260 pounds with a beard, which matched the description of Petitioner, shot the victim (*Id.*, Ex. 2 at 25). Thus, the reports do not establish how Jenkins would have testified.

Third and finally, Jenkins' alleged testimony would not have supported the defense Petitioner presented at trial. Petitioner's defense, supported by his own testimony, was he and the victim were fighting on the ground when the victim pulled out a gun, which accidentally fired and shot the victim as he grabbed the gun to defend himself (Doc. 10-2, Ex. 4 at 631-33). Jenkins' testimony, according to Petitioner, would have presented a different defense theory: a second person shot the victim. But there is no evidence in the record supporting that theory. And Petitioner admits the victim was shot while he and the victim were tussling with a gun.

Petitioner has failed to demonstrate that the state courts' rejection of this claim was contrary to, or an unreasonable application of *Strickland*, or an unreasonable determination of the facts in light of the evidence adduced in state court. Accordingly, Ground Four warrants no relief.

**Ground Five: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to conduct adequate pre-trial investigations that a .357 Ruger was**

**incapable of firing ten round [sic] of ammunition consistent with the victims [sic] injuries and presenting an expert witness showing that the revolver is incapable of firing ten rounds of ammunition. (Doc. 1 at 22-24)**

Petitioner alleges the police report and medical records show that the victim had nine or ten entrance wounds, and that the State suggested Petitioner shot the victim with a .357 revolver. He contends counsel was ineffective in failing to investigate that a .357 revolver cannot fire ten rounds of ammunition and call an expert to provide that testimony. He argues this evidence would have established that either more than one weapon was used, or the revolver was reloaded. And he contends this evidence would have supported his theory of self-defense.

This claim was raised in state court as claim 4 of Petitioner's amended Rule 3.850 motion (Doc. 10-2, Ex. 12 at 883-85). In denying the claim, the state post-conviction court stated:

> In claim 4, the Defendant asserts that trial counsel was ineffective in failing to conduct an adequate pretrial investigation into the fact that a .357 Ruger revolver was incapable of firing ten rounds of ammunition consistent with the victim's injuries and presenting an expert witness to testify to same. Again, the Defendant's theory is that someone else shot the victim and that a Ruger revolver was incapable of producing 9 or 10 wounds to the victim. A Ruger revolver gun case was found at the Defendant's residence. (See transcript, attached, pp. 327-329)

> There is no probability that the Defendant's claim would have resulted in a different result at his trial. There was testimony at the Defendant's trial that there were no shell casings found at the scene of the shooting, indicating that a revolver was involved in the shooting and not a semiautomatic handgun. (See transcript, attached, p. 208 and 333-335) Additionally, although there were possibly as many as 10 visible wounds seen on the victim, there was testimony that some

> may have been exit wounds. Two wounds may well have been caused
> by the same bullet on entry and exit from the victim's body. (See
> transcript, attached, pp. 286-290) Accordingly, the evidence presented
> at trial was entirely consistent with a revolver as having been involved
> in the shooting. Based on the above, claim 4 is DENIED.

(Doc. 10-2, Ex. 15 at 1002). The state appellate court affirmed without a written

opinion (*Id.*, Ex. 17).

The rejection of this claim was reasonable. First, Petitioner did not present an

affidavit by an expert who would have testified that a .357 revolver holds only six

bullets, and his claim that trial counsel was ineffective for not presenting an expert's

testimony was speculative. *Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence

about the testimony of a putative witness must generally be presented in the form of

actual testimony by the witness or on affidavit."); *Buckelew v. United States*, 575 F.2d

515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored,

because the presentation of testimonial evidence is a matter of trial strategy and

because allegations of what a witness would have testified are largely speculative.").

Moreover, an expert's testimony on that issue would have been cumulative to

Detective McPherson's testimony that a revolver can only hold six bullets (Doc. 10-

2, Ex. 4 at 567). *See Johnston v. Singletary*, 162 F.3d 630, 639 (11th Cir. 1998) (counsel

was not ineffective for failing to present additional witnesses whose testimony would

have been cumulative).

Second, the victim verified that the doctor's report indicated there were nine

bullet holes, and three bullets remained in his body (*Id.*, Ex. 4 at 482-83). And crime

scene investigator Amy Losciale testified that while at the hospital she saw there were "at most 10" gunshot wounds on the victim's body but could not determine whether they were "entrance wounds" or "exit wounds." (*Id.*, Ex. 4 at 521-24). Thus, even if an expert would have testified a revolver only holds six bullets, that would have been consistent with the evidence that there were nine bullet wounds on the victim's body (three bullets remained in the victim, and three bullets that entered and exited the victim). Therefore, Petitioner cannot show counsel was deficient in failing to investigate how many rounds a revolver can hold and hire an expert to testify on the issue.

Petitioner has failed to demonstrate that the state courts' resolution of this claim was contrary to *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Five warrants no relief.

**Ground Six: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to conduct adequate pre-trial investigations to support self-defense theory. (Doc. 1 at 26-28)**

Petitioner contends counsel was ineffective in failing to present an adequate defense of self-defense. Specifically, Petitioner asserts counsel should have investigated and presented evidence showing: 1) an angry mob followed the victim and his party to the vehicle where the shooting took place; (2) a .357 Ruger revolver was incapable of firing ten rounds; (3) a light skinned black male was seen standing

22

over the victim while laying prone on the ground; and (4) the victim was intoxicated by alcohol and benzo's, which could have affected the victim's memory and perception of the events.

This claim was raised in state court as claim 5 of Petitioner's amended Rule 3.850 motion (Doc. 10-2, Ex. 15 at 979-82). In denying the claim, the state post-conviction court stated:

> In claim 5, the Defendant asserts that trial counsel was ineffective in failing to conduct an adequate investigation to support a self-defense theory. The Defendant states that the self-defense theory was the only defense available to him and that trial counsel failed to adequately investigate his defense for the reasons stated in his previous claims. He claims that if an adequate investigation had been done the jury would have found that he actually wrestled the gun from the victim and shot him in self-defense. For the reasons stated in claims 2 through 4, claim 5 is DENIED.

(*Id.*, Ex. 15 at 1002-1003). The state appellate court affirmed without a written opinion (*Id.*, Ex. 17).

The denial of this claim was reasonable. Evidence that the victim was intoxicated, and a group of people followed the victim out of the bar was presented at trial (*Id.*, Ex. 4 at 506-10). And (1) Petitioner testified to self-defense; (2) counsel argued it to the jury; and (3) the jury was instructed on self-defense (*Id.*, Ex. 4 at 612-14, 686-704, 731-33). As discussed in Grounds Three, Four, and Five above, Petitioner presented no evidence showing ten rounds were fired, or someone other than Petitioner shot the victim. Nor did he show how that information, considering

he admitted to shooting the victim, would have bolstered his theory of self-defense. Thus, Petitioner failed to demonstrate both deficient performance and prejudice.

Petitioner has not shown that the state courts' decision rejecting his ineffective assistance claim was contrary to, or an unreasonable application of, *Strickland* or that the decision was based on an unreasonable determination of the facts. Accordingly, Ground Six warrants no relief.

**Ground Seven: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to conduct adequate pre-trial investigations and present Sherika Coleman as a vital defense witness. (Doc. 1 at 30-32)**

Petitioner contends counsel was ineffective in failing to investigate Sherika Coleman and call her to testify. He avers Coleman would have testified that: 1) she witnessed the victim and Petitioner arguing then fighting; 2) she heard three-to-five-gun shots; 3) while Petitioner and the victim were tussling, she saw the victim attempting to flip Petitioner over and sparks between the victim and Petitioner; 4) she saw the victim end up on the ground with Petitioner on top of him; and 5) she heard more gun shots while Petitioner and the victim were on the ground. He argues this testimony "would have clarified and validated Petitioner's account of self-defense." (Doc. 1 at 30).

This claim was raised in state court as claim 8 of Petitioner's amended Rule 3.850 motion (Doc. 10-2, Ex. 12-2). It appears, however, that the claim was not addressed by the state post-conviction court (*Id.*, Ex. 15 at 1000-1003, 1106-1109).

24

Because the state court did not adjudicate the merits of Petitioner's claim, the Court will review the claim *de novo*. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013) (*de novo* review of a claim is appropriate when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court[.]").

Petitioner fails to show prejudice because there is no reasonable probability that the outcome of the trial would have been different had Coleman testified as Petitioner alleged she would. In her statement to law enforcement, Coleman testified Petitioner pursued the victim outside the bar after Petitioner was told the victim hit his sister (*Id.*, Ex. 15 at 936-50). Petitioner and the victim began fighting, and Coleman saw a flash as the victim was trying to throw Petitioner to the ground (*Id.*). While the men were both on the ground, she heard three to five more shots (*Id.* at 941). She never saw the gun or who shot it (*Id.* at 941-42).

Because Coleman never saw the gun or the shooter, her testimony would not have supported Petitioner's theory that the victim had the gun and was accidently shot while Petitioner was trying to take the gun from him. Rather, the testimony is merely cumulative to both the victim's testimony and Petitioner's testimony to the extent they both testified they were fighting when the victim was shot (*Id.*, Ex. 4 at 511-16, 613-14, 630-33). Thus, Petitioner demonstrates neither deficient performance nor prejudice. Ground Seven therefore warrants no relief.

**Ground Eight: Petitioner was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution as cumulative errors deprived Petitioner of a fair trial. (Doc. 1 at 33-34)**

Petitioner contends that the cumulative effect of trial counsel's alleged errors denied him his right to a fair trial. This claim was raised in state court as claim 6 of Petitioner's amended Rule 3.850 motion (Doc. 10-2, Ex. 12 at 889-90). It appears, however, that the claim was not addressed by the state post-conviction court (*Id.*, Ex. 15 at 1000-1003, 1106-1109). Because the state court did not adjudicate the merits of Petitioner's claim, the Court will review the claim *de novo*. *See Johnson v. Williams*, 568 U.S. 289 at 303.

"Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, there are no individual errors to accumulate, so Petitioner's cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, No. 8:19-cv-39-SDM-AEP, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, Otero proves no error to accumulate to show cumulative prejudicial effect."). Ground Eight warrants no relief.

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk of the Court is directed to enter judgment against Petitioner and close this case.

2. This Court should grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on August 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*
Counsel of Record

27